# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ARSENIO DECORD STEWART,

      Petitioner,

v.                                  Case No. 3:18-cv-251-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

## I. **Status**

      Petitioner, Arsenio Decord Stewart, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. Petitioner challenges a state court (Putnam County, Florida) judgment of conviction for possession of a firearm by a convicted felon, for which he is serving a fifteen-year term of incarceration. Doc. 1 at 1. Respondents filed a Response.[1] See Doc. 14. And Petitioner filed a Reply. See Doc. 23. This case is ripe for review.

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

## II. <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

2

> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." Harrington v. Richter, 562 U.S. 86, 101
> (2011) (internal quotation marks omitted). "It bears
> repeating that even a strong case for relief does not
> mean the state court's contrary conclusion was
> unreasonable." Id. [at 102] (citing Lockyer v. Andrade,
> 538 U.S. 63, 75 (2003)). The Supreme Court has
> repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than
> mere error or even clear error. See, e.g., Mitchell v.
> Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at
> 75 ("The gloss of clear error fails to give proper
> deference to state courts by conflating error (even clear

> error) with unreasonableness."); <u>Williams v. Taylor</u>,
> 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254

habeas action in federal court, a petitioner must exhaust all state court

remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C.

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]"

every issue raised in his federal petition to the state's highest court, either on

direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351

(1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

<u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> """opportunity to pass upon and correct" alleged

4

> violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases,

allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

**C. Ineffective Assistance of Counsel**

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other."  Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   **Factual Summary and Grounds for Relief**

Petitioner raises four grounds for relief, all of which challenge the legality of his fifteen-year sentence following his plea of no contest. <u>See generally</u> Doc.

1. For context, the Court summarizes the procedural history underlying Petitioner's claims.

The state charged Petitioner with possession of a firearm by a convicted felon, a second degree felony carrying a three-year minimum mandatory term of incarceration and a maximum fifteen-year term. Resp. Ex. A at 6. On September 9, 2013, Petitioner, with help from trial counsel, entered a plea of no contest to "constructive" possession of a firearm by a convicted felon, which does not carry a minimum mandatory term. Resp. Ex. B at 5. In exchange for his plea, the state offered Petitioner a one-year-and-one-day term of incarceration. Id. at 16; Resp. Ex. A at 19. Before the trial court accepted Petitioner's plea, Petitioner requested that the trial court set Petitioner's sentencing hearing for a later date. Resp. Ex. B at 17. The trial court granted the request, explaining the following:

> THE COURT: All right. Mr. Stewart, I don't have any problem with a sentencing date. It will be about a month from now. But you have to understand that if you violate the conditions of your pretrial release while awaiting your sentencing I'm not going to allow you to withdraw your plea unless there's a really good reason, I will bound [sic] by the year and a day.[5] A second degree felony's punishable by a maximum penalty of 15 years in prison or a $10,000 fine; do you understand that?

---

[5] Although the transcript is garbled, it is clear from context and later proceedings that the trial court said that it was not bound by the year-and-a-day offer.

. . .

> THE DEFENDANT: Yes, sir.

Id. at 17-18. Petitioner then advised the trial court, under oath, that he was entering the plea knowingly, voluntarily, and with full understanding of its consequences. Id. at 18-21. He also stated he was entering the plea because he believed it was in his best interest. Id. He advised the trial court that he had enough time to discuss his decision with his trial counsel and that he was satisfied with his trial counsel's representation. Id. at 21. Based on Petitioner's statements, the trial court accepted the plea and set Petitioner's sentencing hearing for a later date. Id. at 22. Petitioner remained out on bond pending his sentencing hearing. Resp. Ex. D at 34.

Five days later, on September 14, 2013, Petitioner violated the conditions of his pretrial release and was arrested and charged for a new count of possession of a firearm by a convicted felon. Id. On December 3, 2013, the trial court conducted its sentencing hearing, during which the state informed the trial court of Petitioner's newly charged felony. Id. The trial court then had the following exchange with the state, defense counsel, and Petitioner:

> THE COURT: All right. He pled to constructive possession of a firearm, the agreed upon disposition was 12.1. Either he was already out or he was let out, that's inconsequential, but he was told that if he violated the conditions of pretrial release, and the two most common ways that occurs are not showing up or committing a new law violation, that he would not be

permitted to withdraw his plea unless there were extraordinary circumstances, and neither I nor the State would be bound by the recommended disposition. So is there any legal bar to proceeding with sentencing at this time?

MR. JANESK: Not from the State, Your Honor.

MR. SMITH: No legal bar, Your Honor.

THE DEFENDANT: Your Honor, excuse me, I had put in a motion to dismiss counsel because he came to see me in October and he told me that you were going to give me more than a year and a day because of me being arrested and whatnot while I was out on bond. I don't know nothing about no pretrial release, but I come to find out being released on bond that's considered pretrial release. And I don't remember being told nothing else because you told me that you was accepting my plea and you wouldn't let me or the State withdraw the plea, all the other stuff I don't know nothing about that. And he said--

THE COURT: Well, then you weren't listening.

THE DEFENDANT: -- I asked him to withdraw my plea because I told him I didn't go to trial, I didn't lose no trial, I didn't go to trial, I took a plea that the State offered. They offered . . . year and a day, I took a year and a day, so he come and tell me that I was going to get more than a year and a day, I told him I wanted to withdraw my plea. And when we came to court last month, I told him again I needed to talk to him in court, which he ignored me, he haven't been to see me since last month, to try to put in a motion with him to withdraw my plea before sentencing. And according to criminal procedure rule 3.17(f) I am entitled to withdraw my plea, and that's what I would like.

THE COURT: You're entitled to ask to withdraw your plea. So let me ask you this question: Are you asking to

withdraw your plea because you've been told by your attorney, and I'm telling you now that you may be punished or sentenced to more than 12.1 Department of Corrections; is that why you want to withdraw your plea?

THE DEFENDANT: That's not what I . . . agreed to. I would like what I agreed to. If not then I feel like--

THE COURT: So you think that notwithstanding the fact that I told you, and I'm not telling you I think I told you, I'm telling you I know I told you, and I know that you told me you acknowledged what I was telling you that if you violated the conditions of pretrial release while awaiting sentencing that I would not be bound by the negotiated disposition. And it's alleged and a probable cause determination has been made that while you were out on pretrial release you possessed a firearm again. And it's your understanding that no matter what you did while awaiting sentencing you were still going to get the deal?

THE DEFENDANT: Well, I'm not saying that you didn't inform me of that, but I don't remember, but I'm not saying that you didn't tell me that.

THE COURT: Why don't you talk to your attorney. He can explain everything to you. I want you to articulate for me what the basis is on why you think that you want to withdraw your plea today, and then I'll make a decision based on that. So talk to him in the jury box. We'll recall it. Go on ahead.

Id. at 34-37. Petitioner and trial counsel then privately conversed and afterward, trial counsel advised the trial court that Petitioner wished to withdraw his plea:

MR. SMITH: Your Honor, as what Mr. Stewart said earlier, when I spoke to him previously, I explained to

13

him the fact that the Court -- that it was within the Court's power to sentence him to any legal sentence, that they would not be bound by the 12.1. Last month when we came in since . . . Your Honor was not present, the case was continued so that you could address -- the State felt that you would want to address this case since you had originally taken the plea. Mr. Stewart is wanting to withdraw his plea because he feels that if he's not going to receive the 12.1 that that is not what he negotiated.

THE COURT: Okay. So the motion before the Court ore tenus is to withdraw his plea based on his belief that -- or your explanation to him that because he committed a new law violation per the probable cause finding of the first appearance judge, notwithstanding that he believes he's still entitled to 12.1, correct?

MR. SMITH: Yes, Your Honor.

THE COURT: And that's the basis for the motion to withdraw?

MR. SMITH: Yes, Your Honor.

THE COURT: All right. State's position on that?

MR. JANESK: Your Honor, that's not a legal basis. He knowingly entered the plea. I'm sure he was advised that he couldn't commit new law violations, and he should still be kept to the plea and we should not be held to the 12.1 anymore.

THE COURT: All right [sic]. Motion denied.

Id. at 37-38.

The state then presented testimony from Officer Scott Surrency, the officer who arrested Petitioner for the newly charged offense. Id. at 40-44.

14

Surrency explained that on September 14, 2013, he and another officer were driving in an unmarked undercover patrol vehicle when they saw Petitioner and another individual standing near the street outside a parked car. Id. at 41. He testified that he witnessed the second individual hand Petitioner a "lit object" later identified as a marijuana "cigar" or cigarette. Id. Surrency then pulled up next to Petitioner and when Petitioner recognized they were dressed in law enforcement attire, Petitioner concealed the marijuana in his hand and began walking away. Id. at 42. Surrency got out of the vehicle and announced his identity, but Petitioner continued to walk away and Surrency grabbed Petitioner to stop him. Id. Surrency conducted a pat down of Petitioner and found a fully loaded handgun tucked into Petitioner's waistband. Id. at 42-43. Petitioner initially refused to tell Surrency his name, but Surrency testified, "I recognized [Petitioner] from about three days prior to that I happened to be in this courtroom -- for another matter and saw him in here, recognized him, and recognized the fact that he was on -- it had something to do with a firearm . . . ." Id. at 42.

Following Surrency's testimony, the state requested that the trial court sentence Petitioner to the maximum fifteen-year term. Id. at 48-49. Defense counsel requested that the trial court sentence Petitioner to the state's initial offer of twelve months and one day. Id. at 49. The trial court sentenced Petitioner to the maximum fifteen-year sentence. Id. at 51. Petitioner then filed

four pro se motions challenging his fifteen-year sentence and the trial court's departure from the state's original offer, including a motion to withdraw his plea. See Resp. Ex. A at 45, 46, 66, 71. The trial court denied Petitioner's pro se motions, see id. at 51, 55, 68, 72, and appointed counsel to represent Petitioner during his direct appeal, see id. at 88. Appellate counsel, on behalf of Petitioner, filed an initial brief under Anders v. California, 386 U.S. 738 (1967). Resp. Ex. F. And Petitioner filed a pro se initial brief. Resp. Ex. G. The Fifth District Court of Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. H.

**Ground One**

Petitioner argues that the trial court "did not provide Petitioner the opportunity to withdraw the plea prior to imposition of the fifteen year sentence now at issue." Doc. 1 at 5. Petitioner raised a similar claim in his pro se brief filed on direct appeal, arguing he had a right to withdraw his plea prior to sentencing under Florida Rule of Criminal Procedure 3.170(f). Resp. Ex. G at 5. The state declined to file a response. See Stewart v. State, No. 5D14-2633 (Fla. 5th DCA). The Fifth DCA rejected the argument and affirmed Petitioner's judgment and sentence. Resp. Ex. H.

Rule 3.170(f) provides that "[t]he court may in its discretion, and shall on good cause, at any time before a sentence, permit a plea of guilty or no contest to be withdrawn . . . ." Fla. R. Crim. P. 3.170(f). In this claim, Petitioner is asking

16

the Court to enforce his state created ability to withdraw his plea under that Rule. But the writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)). The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody violates the Constitution or laws or treaties of the United States. See Coleman v. Thompson, 501 U.S. 722 (1991). Only in cases of federal constitutional error will a federal writ of habeas corpus be available. See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990). It is not the province of this Court to reexamine the state-court's determination on an issue of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" Branan, 861 F.2d at 1508 (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

In affirming Petitioner's judgment and conviction, the Fifth DCA found that the trial court did not abuse its discretion under Rule 3.170(f) when it denied Petitioner's presentence request to withdraw his plea. The Court must adhere to the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992). Here, there has been no breach of a federal

constitutional mandate. Petitioner has presented a state law claim, not a claim of federal constitutional dimension. Thus, it is not cognizable in this proceeding and is due to be denied.

### Ground Two

Petitioner argues that his trial counsel was ineffective for failing to object to the state's recommendation that Petitioner receive a sentence greater than the agreed upon one-year-and-one-day term or the trial court's imposition of a greater sentence. Doc. 1 at 7. Respondents argue that this claim is unexhausted and procedurally defaulted because Petitioner never presented it to the state courts. Resp. at 10-11. In his Petition, Petitioner asserts that he raised this claim on direct appeal and in a Florida Rule of Criminal Procedure 3.850 motion for postconviction relief, which the trial court denied on November 10, 2015. Doc. 1 at 7-8.

Petitioner did not raise an ineffective assistance of counsel claim in the Rule 3.850 motion that he references in this Ground. See Resp. Exs. Q, R. However, in his pro se brief filed on direct appeal, Petitioner raised a claim about the alleged cumulative effect of his trial counsel's errors. See Resp. Ex. 9-12. As mentioned above, the Fifth DCA rejected Petitioner's argument on direct appeal and affirmed his judgment and sentence. Resp. Ex. H.

If the state appellate court did adjudicate this claim on the merits, the state court's decision is entitled to deference. After applying that deference, the

Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings.

Further, even absent deference to the Fifth DCA's adjudication, Petitioner's claim is meritless. The record shows that Petitioner knowingly and voluntarily entered his no contest plea, and he was advised that if he violated the conditions of his pretrial release before sentencing, the trial court would not allow Petitioner to withdraw his plea. Resp. Ex. B at 17. Further, despite Petitioner's presentence arrest for a new law violation, trial counsel still requested that the trial court sentence Petitioner to the state's original offer of one year and one day. However, the trial court rejected trial counsel's request and imposed a lawful fifteen-year sentence. Petitioner has failed to prove deficient performance under Strickland and this claim is denied.

**Ground Three**

Petitioner asserts that the state "breached the plea agreement" when at sentencing, it recommended that Petitioner receive a sentence greater than the agreed upon term. Id. at 8. He contends that he never agreed to or knew that the state could depart from that negotiated disposition. Id.

Petitioner raised this claim in his pro se brief on direct appeal. Resp. Ex.

19

G at 6. The state declined to file an answer brief, and the Fifth DCA denied the claim and affirmed Petitioner's judgment and sentence. Resp. Ex. H. Respondents argue that this claim is not cognizable because, like Ground One, it is an issue of state law. Resp. at 9-10. However, in his pro se brief on direct appeal, Petitioner argued that the state's disregard of the negotiated plea agreement violated his federal due process rights. Resp. Ex. G at 8. Thus, if Petitioner presented the federal constitutional nature of this claim to the state appellate court, the Fifth DCA's adjudication is entitled to deference.

When Petitioner entered his plea, he acknowledged that he would be subject to the fifteen-year maximum sentence if, before sentencing, he violated the terms of his conditional release. Resp. Ex. B at 17-18. Thus, when Petitioner was arrested for a new possession of a firearm by a convicted felon charge days after his plea, he knew that the state could request the imposition of a sentence exceeding its one-year-and-one-day offer. As such, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Three is denied.

**Ground Four**

Petitioner asserts that he is "being held against his will" because he pled

to a 12.1-month term of incarceration and "is being [] detained longer tha[n] he agreed to be . . . ." Doc. 1 at 10. Respondents argue that this claim is an issue of state law and not cognizable on federal habeas review. Resp. at 9-10. This Court agrees. Further, if this claim can be liberally construed as a federal claim, it lacks merit for the same reasons described in the previous Grounds. Ground Four is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of March, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Arsenio Stewart, #V31003
       Allison Leigh Morris, Esq.

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.